JAMES BIANCO and MARGARET BIANCO, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bianco v. Commissioner
Docket No. 3821-80.
United States Tax Court
T.C. Memo 1982-186; 1982 Tax Ct. Memo LEXIS 562; 43 T.C.M. (CCH) 1039; T.C.M. (RIA) 82186; April 12, 1982. Max A. Reinstein, for the petitioners. John J. Morrison, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined deficiencies in and additions to petitioners' Federal income tax in the following amounts: Addition to Tax
Year
Deficiency
Sec. 6653(a) [1]
1972 [2]
$ 19,189.24
$ 964.46
1973
93,976.57
4,698.83
*563 After concessions, the remaining issues are (1) the amount of gain recognized on the sale of seven acres of land in 1972, (2) petitioners' basis in three vacant lots sold in 1973, and (3) whether petitioners are entitled to the benefits of income averaging for the years 1972 and 1973. Some of the facts have been stipulated and are found accordingly. To facilitate discussion of the issues, findings of fact and opinion will be combined. Petitioners, James Bianco and Margaret Biano, were residents of Glenview, Ill., at the time their petition was filed. 1. Gain on Sale of Land
As of the beginning of 1971, petitioners owned an eight-acre tract of vacant land called the Golf Road Property. In 1971, James Bianco (petitioner) *564 entered into an agreement to sell seven of those acres to two individuals interested in developing that property. Pursuant to that agreement, petitioner was to receive $ 570,000 plus ten six-unit apartment buildings in exchange for the land. [3] However, the sale was not carried out under the terms of that agreement. The parties apparently renegotiated the agreement with the actual sale, as reported on petitioners' 1972 tax return, occurring on March 10, 1972. We are given no details or terms of that agreement. Although not entirely clear from the record, it appears that La Casa Bianco Estates, Inc. (La Casa)--a corporation organized to develop that property--was either the ultimate purchaser or, at least, assumed the purchase obligations. By December 1972, the land was no longer vacant but was in the process of being developed. In a sworn affidavit dated October 31, 1980, petitioner stated he sold the land to La Casa for $ 650,000. On their 1972 Federal income tax return, petitioners reported a gross sales price of $ 570,000 and an adjusted basis of $ 145,000 for a total gain *565 of $ 425,000 on the sale of the seven acres. In his notice of deficiency, respondent determined petitioners' basis in the property was $ 68,905, thus, respondent increased petitioners' gain by $ 76,095. By amended petition, petitioners asserted the sale price of $ 570,000 should be reduced by $ 110,000 for certain amounts owed but not received on the sales price. By amended answer, respondent increased the deficiency by increasing the sales price from $ 570,000 to $ 650,000. During that same year, 1972, petitioner and the two individual developers organized two corporations--La Casa and Bianco Management Corp. to provide management services with respect to the developed property. Petitioner owned 500 of the 1,000 outstanding shares of La Casa and 1,000 of the 3,000 outstanding shares of Bianco Management Corp. Petitioner desired to discontinue the business venture with the other two individuals; thus, on February 12, 1973, he sold all his shares of both corporations to the remaining two shareholder-developers for a stated price of $ 357,500. On their 1973 Federal income tax return, petitioners did not report any gain on the sale of stock of La Casa and Bianco Management Corp. *566 Petitioners now agree that such gain, based on a selling price of $ 357,500, is taxable to them in 1973. The issue is the amount of gain realized on the sale of the seven acres of Golf Road Property. The amount of gain from the sale of property is equal to the excess of the amount realized over the adjusted basis. Sec. 1001(a). With respect to the sale of this property, both the amount realized and the adjusted basis are at issue. It is undisputed that the sale occurred in 1972, and that the amount realized for determining gain depends on a resolution of the following issues: (1) the correct selling price, [4] and (2) whether certain amounts received with respect to that sale were included in petitioners' gain with respect to the sale of petitioner's stock in a separate but related transaction. As reported on their 1972 Federal income tax return, petitioners contend the selling price was $ 570,000. Based on petitioner's sworn affidavit, respondent determined the correct selling price was $ 650,000. Such determination resulted in an increased deficiency for which respondent bears the burden of proof. [5] *567 Rule 142(a). [6]
Respondent introduced into evidence petitioner's own sworn affidavit that the property was sold to La Casa for $ 650,000. Petitioner was given ample opportunity to explain his sworn statement, but such explanation was vague and inconclusive. Petitioner said his statement was a "mistake"--that he thought it was the "whole total package on this deal." Yet, petitioner gave no explanation as to how he arrived at the $ 650,000 figure that he claims represents the "whole total package." [7] Moreover, no reason for making the affidavit is given. Based on the entire record, we are satisfied respondent has carried his burden as to the increased deficiency. Petitioner's own *568 sworn affidavit is substantive evidence in the nature of an admission by a party opponent, Rule 801(d)(2), Fed. Rules of Evidence, and constitutes strong evidence against him. We are persuaded the correct selling price was $ 650,000. As part of the purchase price of the land, petitioner received eleven checks, totaling $ 110,000, which were drawn on the account of La Casa. Petitioners contend that $ 110,000 was included in the sales price of the stock and, therefore, they are being taxed twice on the same gain. Respondent claims the sale of land and the sale of stock constitute separate transactions, and no part of the $ 110,000 was included as part of the sales price of the stock. We agree with respondent. Although the sale of stock and the sale of land were related, they nevertheless *569 constitute separate transactions. When asked if representatives of La Casa told him they would make good on the eleven checks, petitioner testified, "Yes, after we paid off the $ 357,000," referring to the price paid for petitioner's stock. Furthermore, petitioner's own 1972 Federal income tax return which was prepared after the date petitioner sold his stock, shows a sales price of $ 570,000 for the land with no reduction for the $ 110,000 allegedly received as part of the sales price of the stock. We find no part of the $ 110,000 represented by eleven checks was included in the price paid for petitioner's stock; thus, petitioners are not being taxed twice on that amount. [8] In summary, we find the amount realized on the sale of the land was $ 650,000 with no reduction for any amount claimed to be taxed in another transaction. [9]
*570 Petitioners' basis in the property for computing gain is also disputed. Petitioners claim they purchased the property from the parents of petitioner James Bianco for $ 80,000 of which $ 35,000 was paid up front and the remaining $ 45,000 was paid over a period of time. Respondent contends petitioners' cost basis was $ 34,000. We are satisfied petitioners purchased the property, and $ 35,000 was paid on the purchase price. However, we are not convinced petitioner either made the alleged payments of $ 45,000 or that petitioner was obligated to pay his parents such amount. Thus, we find the basis of the property did not include the claimed $ 45,000. The burden of proof is on petitioners to overcome the presumption that attaches to respondent's determination. Welch v. Helvering,290 U.S. 111 (1933). At trial, petitioner could not state when the alleged payments totaling $ 45,000 were made. No canceled checks, receipts, or documentary evidence of any kind was introduced to substantiate those payments. Moreover, no contract of purchase, closing statement, loan statement, notes or other documentary evidence was introduced to show the existence of a $ 45,000 debt *571 allegedly owed to petitioner's parents. In short, petitioners have failed to establish a cost basis in excess of $ 35,000. Respondent has allowed basis adjustments of $ 28,950 for the cost of improvements and $ 5,955 for certain other minor costs less depreciation. Thus, petitioners' total basis in the property was $ 69,905. Petitioners also claim that, in addition to the $ 69,905 basis as determined above, their basis should be increased by $ 32,500 for the cost of garage and barbeque facilities and by $ 550 for the cost of a "genie" electric garage door opener. No canceled checks, invoices, or any reliable evidence was introduced to substantiate those expenses. Moreover, there is no showing that those improvements were located on the seven acres sold. Again, petitioners have failed to meet their burden of proof. In summary, we find the amount realized on the sale of the seven acres was $ 650,000 and the adjusted basis was $ 69,905; thus, petitioners' gain on the sale of the Golf Road Property was $ 580,095. 2. Basis of Vacant Lots
Petitioners sold three vacant lots in 1973. On their 1973 Federal income tax return, petitioners reported a gain of $ 41,325 on that *572 sale, based on a sales price of $ 60,000 and a cost basis of $ 18,675. In his notice of deficiency, respondent determined petitioners are allowed a cost basis of $ 10,810, increasing their gain by $ 7,865. We are not given petitioners' date of purchase or any direct evidence of what petitioner may have paid for those three vacant lots. Petitioners attempted to establish a cost basis of $ 18,675 by having their accountant testify as to his own estimation of the property's fair market value. That estimation was based on the value of other land the accountant owned which was "close" to petitioners' property and which the accountant purchased in 1957. It is difficult for us to see what bearing the accountant's opinion as to the property's fair market value has on what petitioners paid for the property. Moreover, there is no showing the accountant had any background in real estate appraisal. The proof presented is hardly sufficient to establish petitioners' cost basis. Rule 142(a). Thus, we sustain respondent's determination that such cost basis was $ 10,810. 3. Income Averaging
Petitioners seek the benefits of income averaging, sections 1301 etseq., for the *573 taxable years 1972 and 1973. In determining the taxable income for a particular year under the income averaging provisions, it is necessary to compute the correct taxable income of each base period year. Unser v. Commissioner,59 T.C. 528 (1973). The base period years are the four taxable years immediately preceding the computation year. Sec. 1302(c)(2). Petitioners bear the burden of establishing the correct taxable income for each base period year. [10]
Petitioners failed to file Federal income tax returns for the taxable years 1968 and 1969 which are base period years for the taxable years in issue, 1972 and 1973. Petitioners submitted copies of what purport to be retained copies of Federal income tax returns for 1968 and 1969. Both of those returns show zero taxable income. Petitioners also submitted what purport to be retained copies of amended Federal income tax returns for 1970 and 1971, *574 also base period years. Similarly, neither of those returns demonstrate any taxable income. Petitioners introduced no other evidence explaining or supporting their tax returns for 1968 through 1971. We are left with the distinct impression the purported copies of tax returns do not accurately reflect petitioners' correct taxable income for the relevant base period years. It appears those copies were prepared solely for purposes of trial. Moreover, petitioner's testimony throughout this proceeding has not been credible. We are not required to accept petitioner's testimony at face value, even if uncontradicted, when it is "improbable, unreasonable, or questionable." Banks v. Commissioner,322 F.2d 530, 537 (8th Cir. 1963). We find petitioners have not established their correct taxable incomes for the base period years 1968 through 1971. Therefore, petitioners are not entitled to avail themselves of the benefits of income averaging for the taxable years 1972 and 1973. To reflect concessions and the foregoing, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended, and in effect during the taxable years in issue. ↩
2. In his statutory notice of deficiency, respondent determined a deficiency of $ 2,867.95 in petitioners' 1972 Federal income tax and an addition to tax of $ 143.40. By amended answer, respondent increased the deficiency determined to $ 19,189.24 and the addition to tax of $ 964.46.↩
3. The developers planned to construct 38 six-unit apartment buildings on the purchased land.↩
4. Petitioners did not report the sale on the installment basis.↩
5. With respect to the sec. 6653(a) additions to tax, a question might arise as to who bears the burden of proof on those additions as they relate to the increased deficiencies for 1972. We need not decide that question. It is clear from the record that at least part of the underpayment for 1972 was due to negligence. Thus, regardless of who bears the burden, negligence has been shown. ↩
6. All Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise provided.↩
7. If by the "whole total package," petitioner was referring to the sale of land in conjunction with the sale of his stock of La Casa and Bianco Mangement Corp., we note, by petitioner's own figures, the total selling price was $ 817,500 ($ 460,000 for the land and $ 357,500 for the stock) which is far greater than the $ 650,000 stated in his affidavit.↩
8. Petitioners raise this same issue by arguing the gain recognized on the 1973 sale of stock should be reduced by $ 110,000. Our conclusion here disposes of that issue. Petitioners also contend the amount realized should be reduced by $ 110,000 because the eleven checks were not cashed. Petitioners' contention is without merit. The amount realized from the sale of property is the sum of money received plus the fair market value of property received. Sec. 1001(b). Respondent introduced substantial evidence that La Casa, on whose account the checks were drawn, was a solvent corporation in 1972 and has continued to be a corporation in good financial condition. Petitioners have not shown those eleven checks did not have a fair market value equal to their face amount. Thus, regardless of the fact petitioner did not cash the checks, he must include their fair market value in the amount realized for determining gain. ↩
9. Petitioners admit they are taxable on at least $ 460,000 received for theland and $ 357,500 received for the stock for a total of $ 817,500. Under respondent's determination, the total consideration was $ 1,007,500 ($ 650,000 for the land and $ 357,500 for the stock). We find respondent's determination consistent with the parties' initial agreement (which understandably did not constitute the final agreement but, nevertheless, constitutes the best and most reliable evidence before us) entitling petitioner to $ 570,000 plus ten completed six-unit buildings.↩
10. Venditti v. Commissioner,T.C. Memo. 1981-390; Abernathy v. Commissioner,T.C. Memo. 1978-370; Ryza v. Commissioner,T.C. Memo. 1977-64. See also McCaskill v. Commissioner,77 T.C. 689↩ (1981).